UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
COLLETTE J. SCOTT,                                         :

                Plaintiff,         :      04 Civ. 9638 (SHS) (GWG)

       -v.-                                                  :      OPINION AND ORDER

CITY OF NEW YORK DEPARTMENT OF
CORRECTION, et al.,                                        :

                Defendants.        :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

I. BACKGROUND

    A. Proceedings Prior to the Instant Motion

On December 8, 2004, plaintiff Collette J. Scott filed this action pro se against defendants City of New York Department of Correction, the Correction Officers' Benevolent Association of the City of New York Inc. ("COBA"), and Norman Seabrook, alleging employment discrimination. See Complaint, filed Dec. 8, 2004 (Docket # 1). The original complaint contained allegations that Seabrook assaulted plaintiff by forcing her to kiss him, that she complained about his conduct, and that she was subsequently the subject of unwarranted charges and other retaliatory conduct, including an improper transfer. See id.

On June 22, 2005, the Court issued a scheduling order pursuant to Federal Rule of Civil Procedure 16. See Order Pursuant to Rule 16(b), filed June 22, 2005 (Docket # 22) ("Scheduling Order"). The Scheduling Order gave the parties a deadline of July 20, 2005 to move to amend the complaint and a deadline of October 28, 2005 to complete discovery. Id. at 1. Ten days before the discovery deadline, the Court granted, at Scott's request, a 30-day extension of all deadlines. See Memorandum Endorsement, filed Oct. 20, 2005 (Docket # 24). One month later,

an attorney, Donnahue George, filed a notice of appearance for Scott, see Notice of Appearance, filed Nov. 17, 2005 (Docket # 25), and at his request the Court granted an additional 60-day extension of the original deadlines. See Memorandum Endorsement, filed Nov. 29, 2005 (Docket # 26). The time to move to amend thus expired on October 18, 2005.

Scott and the defendants became involved in various discovery disputes that were presented to the Court by letter. Following a courtroom conference on February 3, 2006, the Court again extended the discovery deadline, this time until April 14, 2006. See Order, filed Feb. 6, 2006 (Docket # 27). It did not, however, extend the deadline for moving to amend the complaint. The Court also ordered that plaintiff's deposition take place on March 8, 2006. See id. The deposition of plaintiff took place on March 8 and 9, 2006. See Memorandum of Law in Support of Plaintiff's Motion to Amend Complaint and Reopen Discovery, filed Dec. 29, 2006 (Docket # 58) ("Pl. Mem."), at 2. Plaintiff was represented by George during this deposition. See id.

Under the Scheduling Order, defendants' motion for summary judgment was due on May 12, 2006. See Scheduling Order. The City sought an extension of this deadline to May 26, 2006, which was granted. See Memorandum Endorsement, filed Apr. 20, 2006 (Docket # 30). On May 3, 2006, George wrote to the Court asserting that defendants had not complied with certain discovery requests. See Memorandum Endorsement, filed May 3, 2006 (Docket # 32). The Court instructed George to file an appropriate motion by May 10, 2006, and adjourned the summary judgment deadline sine die provided the motion was timely filed. See id. On that date, George filed a motion for sanctions against the defendants, see Notice of Motion, filed May

10, 2006 (Docket # 33), which was denied. See Order, filed July 6, 2006 (Docket # 38).[1] The Court adjourned the deadline for the summary judgment motions to July 31, 2006, see id. at 4 – a deadline that was later extended to September 15, 2006, see Memorandum Endorsement, filed July 26, 2006 (Docket # 39), and subsequently extended to September 22, 2006. See Order, filed Sept. 19, 2006 (Docket # 45) ("Sept. 2006 Order"). The defendants duly filed their motions for summary judgment by that date.

On September 15, 2006, a courtroom conference was scheduled before Judge Stein, apparently at the request of Scott herself. After George did not appear, Judge Stein ordered George to show cause "as to why he should not be sanctioned . . . for his repeated failures to contact his client and his adversary." George did not submit papers opposing sanctions; nor did he appear at a hearing held on the matter. See Order, filed Oct. 30, 2006 (Docket # 49). The Court ultimately sanctioned him in the amount of $2,500. Id.

At about this time, Scott obtained new counsel. See Notice of Appearance by Susan B. Egan on Behalf of Collette J. Scott, filed Oct. 26, 2006 (Docket # 48). A conference was held on October 27, 2006, at which Scott's new counsel stated that she wished to take some discovery and to amend the complaint. See Transcript of Oct. 27, 2006 conference, filed Nov. 6, 2006 (Docket # 52), at 9-10. Defendant's counsel reported that Judge Stein had already indicated that he "wasn't predisposed to open the whole thing up," and had directed the filing of summary judgment motions. Id. at 11. The Court stated that, while it shared Judge Stein's views, the Court would not prevent plaintiff from making these motions and would set a schedule for them.

---

[1] In the course of briefing that motion, it was made plain that George had scheduled the depositions of various defendants for April 12, 2006, but had improperly failed to take steps to see that they actually took place. See id. at 2-3.

3

Id. at 11-12.[2]

    B.  The Instant Motion

Scott then made the instant motion to amend her complaint and to reopen discovery – the briefing of which was not concluded until late March 2007 as a result of both plaintiff's and defendants' multiple requests for extensions.[3] Plaintiff's motion papers addressed only the standards for amending the complaint and provided no argument at all as to why discovery should be re-opened. The defendants opposed the amendments not only on untimeliness and prejudice grounds, but also based on a failure to exhaust and other doctrines.

The Court held oral argument on the plaintiff's motion on June 18, 2007. See Transcript of June 18, 2007 conference, filed Aug. 22, 2007 (Docket # 81). At that proceeding, the Court noted that plaintiff's argument seemed contradictory inasmuch as plaintiff asserted that she was adding no new claims while at the same time the complaint was replete with new allegations and,

---

[2] The Court thereafter issued an order indicating that the motions for summary judgment were deemed withdrawn without prejudice to reinstating them by letter following disposition of the plaintiff's motion. See Order, filed Oct. 30, 2006 (Docket # 50).

[3] The plaintiff's motion papers were filed at the end of December 2006 and the beginning of January 2007. See Notice of Motion, filed Jan. 2, 2007 (Docket # 60); Pl. Mem.; Affirmation of Susan B. Egan, dated Dec. 29, 2006 (attached to Pl. Mem.) ("Egan Aff."). The defendants filed opposition papers in late February. See Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Amend the Complaint and Reopen Discovery, filed Feb. 28, 2007 (Docket # 65); Declaration of City Defendant in Opposition to Plaintiff's Motion to Amend the Complaint and Reopen Discovery, filed Mar. 1, 2007 (Docket # 67); City Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Amend the Complaint and Reopen Discovery, filed Mar. 1, 2007 (Docket # 68) ("City Def. Mem."); Affidavit of Alan Serrins in Opposition to Plaintiff's Motion to Amend the Complaint and Reopen Discovery, filed Mar. 7, 2007 (Docket # 69) ("Serrins Aff."). Scott submitted a reply in late March. See Reply Affirmation of Susan B. Egan, filed Mar. 26, 2007 (Docket # 73); Reply Affidavit of Collette J. Scott, filed Mar. 26, 2007 (Docket # 74) ("Scott Aff."); Reply Memorandum of Law, filed Mar. 27, 2007 (Docket # 75) ("Pl. Reply").

4

it appeared, new causes of action. Id. at 3-4. Plaintiff stated that it was "not [her] intention" to add at least some of the claims. Id. at 4. During the course of the argument plaintiff seemed to argue that her intention was to make clear that certain claims were the result of sex discrimination, not just retaliation. Id. at 8-9. Plaintiff also asserted that "the stuff that's in the complaint as I've amended it has basically all been the subject of prior discovery and . . . other filings" – referring to plaintiff's administrative charge. Id. at 10; accord id. at 13. Focusing on the prejudice issue, the Court pointed out that the defendants would have a much stronger argument in opposition to the proposed amended complaint if in fact there were "new claims that they have to defend against." Id. at 11. The Court noted that it would be a different situation if the new complaint consisted merely of the same claims that defendants had "deposed [plaintiff] about, that are in the EEOC charge." Id. The Court proposed that plaintiff make clear what specific incidents she was suing on and what the basis for her claim was with respect to each incident (for example, sex discrimination or retaliation). Id. at 11-12. The Court instructed that the claims should be identified "by a certain time period and a certain thing that happened to [plaintiff]." Id. at 12. Structuring the complaint in this way would enable the defendants to state whether these were new matters or not. Id. at 12-13. The Court instructed plaintiff to send this new complaint to each defendant so that the parties could reconvene for oral argument on the basis of the new complaint. Id. at 16, 23. The Court warned plaintiff that the broader she made her second proposed amended complaint, the better an argument the defendants would have that they would be prejudiced by its filing. Id. at 13.

On July 9, 2007, plaintiff submitted a new proposed amended complaint, see Letter from Susan B. Egan, filed Nov. 13, 2007 (Docket # 83), and the Court held another conference.

See Transcript of July 23, 2007 conference, filed Aug. 22, 2007 (Docket # 80). At that conference, the defendants argued that there were still substantial changes between the original complaint and the second proposed amended complaint involving, for example, allegations regarding a failure to investigate, the relationship between the defendants, hostile environment, differential treatment, a transfer, and other matters. Id. at 4-10. Plaintiff responded that all these matters had been the subject of plaintiff's deposition testimony. Id. at 11.

The Court noted that if "new material and new claims [are] being added[,]" the amendment would not be allowed. Id. at 13. The Court reasoned that material could be part of an amended complaint "if it was something that the parties obviously understood was part of this case," because it was "easily inferrable from the complaint," "came up as a subject of discovery," or "was the subject of document requests." Id.[4] Accordingly, the Court directed plaintiff to provide information as to why the new elements of the proposed amended complaint were already part of the case – for example by citations to the original complaint or to depositions. Id. at 19-20. The Court issued an order denying the original motion to amend without prejudice to a future letter application with respect to the new proposed amended complaint. See Order, filed July 23, 2007 (Docket # 78). Plaintiff thereafter submitted a letter in support of the new amended complaint. See Letter from Susan B. Egan, filed Nov. 13, 2007 (Docket # 84) ("Aug. 13 Letter"). Defendants responded. See Letter from Alan Serrins, filed Nov. 13, 2007 (Docket # 85); Letter from Carolyn Walker-Diallo, filed Nov. 13, 2007 (Docket # 86) ("Sept. 4 Letter"). Plaintiff replied. See Letter from Susan B. Egan, filed Nov. 13, 2007

---

[4]The Court also noted that plaintiff would not necessarily be entitled to any further discovery. Id. at 16-18.

(Docket # 87) ("Sept. 10 Letter").

II. DISCUSSION

We discuss separately plaintiff's requests to amend the complaint and to re-open discovery.

A. Motion to Amend the Complaint

We begin by discussing whether plaintiff has shown good cause for the late amendment. We next discuss whether, in any event, plaintiff's new claims are exhausted.

1. Good Cause

a. Whether Plaintiff Has Shown Diligence. Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend a complaint after a responsive pleading has been filed "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). A separate standard, however, applies for a scheduling order under Federal Rule of Civil Procedure 16. That rule provides that such a schedule "shall not be modified except upon a showing of good cause." Fed. R. Civ. P. 16(b). The more onerous "good cause" standard – not the Rule 15 standard – applies where a scheduling order sets a deadline for amending a complaint. See Parker v. Columbia Pictures Indus., 204 F.3d 326, 339-40 (2d Cir. 2000); accord Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003); Lincoln v. Potter, 418 F. Supp. 2d 443, 453 (S.D.N.Y. 2006) ("When a party moves to amend the pleadings after the deadline to do so in the court's scheduling order has passed, he must satisfy the good cause requirement of Fed. R. Civ. P. 16(b) . . . .").

As one court has held,

"[g]ood cause" requires a greater showing than "excusable neglect." At a minimum, good cause requires a showing by the moving party of an objectively sufficient reason for extending a deadline such that the deadlines cannot reasonably be met despite the diligence of the party needing the extension. The

inquiry focuses on the moving party's reason for requesting the extension.

Pyke v. Cuomo, 2004 WL 1083244, at *2 (N.D.N.Y. May 12, 2004) (internal citations and quotation marks omitted). The Second Circuit has emphasized that "the primary consideration" in determining whether good cause has been shown "is whether the moving party can demonstrate diligence." Kassner v. 2nd Avenue Delicatessen Inc, 496 F.3d 229, 244 (2d Cir. 2007).

Scott's motion to amend was filed more than a year after the deadline passed and came even after summary judgment motions had been filed. Scott has not demonstrated "diligence" during this period. Nor has she attempted to do so. Scott's only explanation for her lateness in seeking to amend the complaint is that her former attorney failed to provide proper representation. See Pl. Mem. at 1-3; Pl. Reply at 4; Egan Aff. ¶¶ 5, 9-10; Scott Aff. ¶¶ 12-15. Thus, Scott contends that her attorney's misconduct provides a sufficient predicate for the late amendment of her complaint. As one case held, however, in considering a similar claim where the more lenient "excusable neglect" standard of Fed. R. Civ. P. 16(b) applied:

> Absent extraordinary circumstances, a client assumes the risk of his attorney's actions and is bound even by the consequences of his attorney's negligence. Chira v. Lockheed Aircraft, Corp., 634 F.2d 664, 666-67 (2d Cir. 1980); Gadsden v. Jones Lang Lasalle Americas, Inc., 210 F. Supp. 2d 430, 436-37 (S.D.N.Y. 2002). Claims by a litigant that he should be excused from his attorney's actions because of alleged fraudulent conduct and disobeyance of the litigant's orders may give rise to a claim for malpractice, but does not constitute an extraordinary circumstance or excusable neglect.

Lastra v. Weil, Gotshal & Manges LLP, 2005 WL 551996, *4 (S.D.N.Y. Mar. 8, 2005; accord McCurry ex rel. Turner v. Adventist Health System/Sunbelt, Inc., 298 F.3d 586, 595 (6th Cir.2002) ("out-and-out lawyer blunders – the type of action or inaction that leads to successful malpractice suits by the injured client – do not qualify as . . . .'excusable neglect.'") (interpreting

Fed. R. Civ. P. 60(b)(1) (citations omitted).

Inasmuch as the "good cause" standard is more exacting than the "excusable neglect" standard, "[t]he mistake or inadvertence of counsel will not support a finding of good cause." Pyke, 2004 WL 1083244, at *2 (citing cases); accord O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 155 (1st Cir. 2004) (no good cause where failure to timely move to amend was caused by non-communication between local and lead counsel); Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418-19 (11th Cir. 1998) (no good cause to amend complaint to espouse jurisdictionally-valid claim where plaintiff's counsel was not diligent in obtaining facts to aid in jurisdiction); McCormick v. Medicalodges, Inc., 2007 WL 471127, at *2-3 (D. Kan. Feb. 8, 2007) (counsel's unfamiliarity with local rules that lead to missed deadline not good cause for untimely amendment of the complaint); Carnrite v. Granada Hosp. Group, Inc., 175 F.R.D. 439, 447-48 (W.D.N.Y. 1997) (deadline missed by attorney's "inadvertence" not good cause for untimely amendment of complaint, even where "[t]he court agrees that Defendants would not be prejudiced by [its] filing"); cf. Hussain v. Nicholson, 435 F.3d 359, 363-64 (D.C. Cir.) (no "good cause" to extend Rule 16 deadline despite the court's "sympath[y]" for the plaintiff, who was "the victim of [the former attorney's] negligence," and sympathy for the new counsel, "who has tried hard to salvage her client's case"), cert. denied, 127 S. Ct. 494 (2006). The same principle necessarily holds true for attorney inadvertence or neglect that rises to the level of malpractice.

b. Effect on Defendants. The Court certainly has sympathy for Scott's circumstances and, were there no prejudice to the defendants arising from her request, might have considered arguments that would justify overlooking the failure to show good cause. See Kassner, 469 F.3d at 244 (while the showing of diligence is the "primary consideration" in determining good cause,

9

court may also consider other relevant factors such as the prejudice to the defendants). Thus, as explained at the last conference, the Court has been trying to determine if the proposed amended complaint would cause prejudice to defendants by raising claims they had no reason to believe were part of the case. The Court directed plaintiff to explain how the claims contained in her proposed amended complaint were in fact expressed in the prior complaint or in other filings such that the defendants would have been put on notice of the claims being made.

Plaintiff's response makes the assertion that "[p]laintiff does not seek to amend the complaint to add claims relating to incidents separate from those alleged in earlier pleadings." August 13 Letter at 5 (emphasis added). Instead, plaintiff seems to say that she seeks merely to assert that the claims in the original complaint were a result not merely of a hostile environment or retaliation but also of gender discrimination. Id. at 5-6; see also id. at 4.

It is hardly clear that there are not new allegations of adverse actions being made in the proposed amended complaint.[5] It is not necessary to parse this question further, however, because the objection to the amended complaint is principally not with respect to the particular incidents alleged but with respect to whether there had heretofore been any indication that the incidents were motivated by gender discrimination, as opposed to retaliation. See Sept. 4 Letter at 2.

As the City points out, there is nothing in either the complaint or the CHR complaint that suggests that the disciplinary charges and other incidents plaintiff complains about were the

---

[5] The new complaint appears to allege a number of specific incidents of adverse actions that were not specifically alleged in the original complaint nor the complaint filed with the City of New York Commission on Human Rights ("CHR"). It may be that these incidents came up during plaintiff's deposition, but plaintiff does not cite to it.

result of sex discrimination. See id. In other words, plaintiff has not previously alleged that she was singled out because of her sex for the particular disciplinary actions or other conduct. Rather, the complaint, fairly read, suggests that the adverse actions resulted from Seabrook's attempts to cover up a forced-kiss incident or constituted retaliation based on plaintiff's complaining about it. There are no allegations that females, including plaintiff, were treated differently as compared with the treatment given to males with respect to discipline, transfers, or other similar actions.[6]

Plaintiff's original complaint certainly alleges sexual harassment, which is a form of gender discrimination. But these claims relate solely to Seabrook's conduct, not to the many incidents of discipline or other allegedly improper treatment alleged in the proposed amended complaint.

Plaintiff argues that gender discrimination is merely a "new . . . theory of recovery,"

---

[6] The one exception brought to the Court's attention relates to certain charges against plaintiff in 2002 and 2003. At plaintiff's deposition, cited in defendants' summary judgment motion, plaintiff asserts that those charges were brought because she was "an Afro American female." City Defendant's Memorandum of Law in Support of its Motion for Summary Judgment, filed Sept. 22, 2006 (Docket # 47) ("Summ. Judg. Mem."), at 11. Thus the claims that these incidents involved gender discrimination could potentially be considered part of plaintiff's complaint, except for the fact that such claims are not exhausted, as is discussed in the next section. (Despite the statement she made during the deposition, plaintiff does not now seek to assert a race discrimination claim with respect to these incidents.)

It should be noted that the mere fact that defendants asserted in their summary judgment motion that plaintiff had set forth no evidence of gender discrimination does not counsel in favor of granting the motion to amend. See Sept. 10 Letter at 1. The defendants argument on this point, running only two pages, merely asserts that plaintiff had not met her burden of showing such discrimination. See Summ. Judg. Mem. at 10-12. There is no discussion of any specific evidence supporting the claim of sex discrimination.

11

August 13 Letter at 5; see Sept. 10 Letter at 1, and thus should be allowed on this basis. But it is one thing to say that a particular set of facts is actionable under two different legal theories that may be applied to the same set of facts – for example, negligence and nuisance. Here, however, the proposed amended complaint is alleging different facts: specifically, the motivation for the defendants' conduct towards plaintiff with respect to each of the adverse actions she alleges. To now assert that a reason for the defendants' actions was gender discrimination necessarily raises a new set of factual issues inasmuch as the original filings suggest only retaliation. Proof regarding gender discrimination would require an inquiry into whether men were treated differently from women with respect to each of the various adverse incidents. Such an inquiry would necessarily rely on facts comparing how men and women were disciplined, transferred or otherwise treated. Requiring defendants to defend against such new claims at this late stage of the case would prejudice them.

Notably, to the extent any denial of leave to amend (or to extend discovery) results in demonstrable prejudice to plaintiff, she has a potential remedy in a malpractice suit against her former attorney. The defendants, however, have no such remedy. The defendants have expended significant sums in defending this case over the last three years, see Serrins Aff. at 13, have deposed the plaintiff over the course of two days, have responded to discovery requests, and have prepared and filed summary judgment motions. To the extent a burden must be borne based on former counsel's conduct, there is no reason why defendants rather than plaintiff should bear this burden. Even if this Court were to consider this case under the more lenient Rule 15 analysis, it would likely conclude that the existence of prejudice bars the proposed amendment. See, e.g., Krumme v. WestPoint Stevens Inc., 143 F.3d 71, 88 (2d Cir.) ("[A]

proposed amendment . . . [is] especially prejudicial . . . [when] discovery ha[s] already been completed and [non-movant] ha[s] already filed a motion for summary judgment.") (internal quotation marks and citation omitted), cert. denied, 525 U.S. 1041 (1998); Messier v. Southbury Training Sch., 1999 WL 20907, at *4 (D. Conn. Jan. 5, 1999) ("The classic situation where courts deny leave to amend arises when a party files a Rule 15(a) motion after discovery has been completed or the nonmoving party has filed for summary judgment.") (emphasis in original) (citing cases). Here, as noted, the higher "good cause" standard applies, and the existence of prejudice counsels even more strongly against the amendment.

2. Exhaustion

In any event, there is a separate problem with the inclusion of gender discrimination claims that requires denial of leave to amend: specifically, plaintiff's failure to exhaust them. See City Def. Mem. at 6-7; Sept. 4 Letter at 2. The law regarding exhaustion in the employment context was recently summarized by the Second Circuit as follows:

> Exhaustion is ordinarily "an essential element" of a Title VII claim. Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001). Claims not raised in an EEOC complaint, however, may be brought in federal court if they are "reasonably related" to the claim filed with the agency. See Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993).
>
> This Circuit has recognized that "[a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." Fitzgerald v. Henderson, 251 F.3d 345, 359-60 (2d Cir. 2001) (internal quotation marks omitted). In this inquiry, "the focus should be 'on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.'" Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003) (quoting Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 637 (9th Cir. 2002)). The central question is whether the complaint filed with the EEOC gave that agency "adequate notice to investigate discrimination on both bases." Id. at 202.

13

Williams v. New York City Housing Auth., 458 F.3d 67, 70 (2d Cir. 2006).

Here, the charge with the relevant entity, the CHR, speaks only of Seabrook's conduct and the resulting aftermath. See Verified Complaint, dated Feb. 25, 1997 (annexed as Ex. A to Aug. 13 Letter). Nothing in this charge could reasonably have caused an investigation to reveal gender discrimination (apart from sexual harassment) with respect to the multiple adverse actions alleged in the proposed amended complaint. This case thus forms part of a long line of cases in which administrative charges suggesting that an adverse action was motivated exclusively by one kind of discrimination did not support a later assertion that a different motivation was the basis for the adverse action. See, e.g., Vandewater v. Canandaigua Nat'l Bank, 2007 WL 210384, at *5 (W.D.N.Y. Jan. 26, 2007) (rejecting effort to add sex discrimination where only retaliation had been alleged administratively); Ribis v. Mike Barnard Chevrolet-Cadillac, Inc., 468 F. Supp. 2d 489, 508 (W.D.N.Y. 2007) (dismissing retaliation claim where plaintiff had alleged hostile work environment); Fleming v. Verizon New York, Inc., 419 F. Supp. 2d 455, 464 (S.D.N.Y. 2005) (EEOC charge making general allegations of discrimination "did not preserve . . . hostile work environment claim [because the charge] makes no reference to a sexually hostile work environment"); Little v. Nat'l Broad. Co., Inc., 210 F. Supp. 2d 330, 375 (S.D.N.Y. 2002) (dismissing race discrimination and harassment claims because "[t]here are no descriptions of racial harassment or racial discrimination and, in fact, no mention of race at all" in the charge alleging retaliation); Giliani v. Nat'l Ass'n of Sec. Dealers, Inc., 1997 WL 473383, at *5 (S.D.N.Y. Aug. 19, 1997) (dismissing race discrimination and hostile work environment claims raised in Title VII suit but not in EEOC charge where EEOC charge included only "general and conclusory race discrimination and harassment claims");

Walsh v. Nat'l Westminster Bancorp., Inc., 921 F. Supp. 168, 172 (S.D.N.Y. 1995) (dismissing sex discrimination claim where "neither the EEOC charge nor its supporting affidavit [alleging retaliation] mention conduct related to sex in any way").

Thus, leave to amend is denied also because the proposed addition is unexhausted and thus the proposed amendment would be "futile." Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

B. Motion to Re-Open Discovery

The "good cause" standard applies to motions to reopen discovery. See, e.g., Gotlin v. Lederman, 2007 WL 1429431, at *2-3 (E.D.N.Y. May 7, 2007) (collecting cases). For the same reasons stated earlier, the failure to take discovery by plaintiff's first attorney does not justify reopening discovery. See, e.g., Hussain, 435 F.3d at 363-64 (no "good cause" to reopen discovery despite the court's "sympath[y]" for the plaintiff, who was "the victim of [the former attorney's] negligence," and sympathy for the new counsel, "who has tried hard to salvage her client's case").

The Court is prepared, however, as a matter of discretion, to permit plaintiff some very limited discovery: specifically, the same depositions of the seven individuals that were previously noticed by her former counsel and for which prior counsel did not appear. The record reflects that the defendants already made efforts to prepare for such depositions, and their counsel apparently had already conferred with the witnesses regarding their testimony. While memories may need to be refreshed regarding such conversations, it seems a small burden to allow these depositions to take place given that they had previously been scheduled and expected by defendants. Accordingly, plaintiff will be permitted to arrange with defendants the

15

depositions of any or all of these individuals – at her option – as long as such depositions are concluded by January 25, 2008. On or before February 1, 2008, defendants should either reinstate their original motions for summary judgment or seek an extension to file new motions if they prefer.

Conclusion

Scott's application to file the proposed amended complaint is denied. Plaintiff may take additional discovery, and only such discovery, as set forth above.

Dated: November 26, 2007
New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge


Copies sent to:

Susan Egan
Egan Law Firm
258 Broadway
New York, NY 10007

Carolyn Walker-Diallo
Assistant Corporation Counsel
100 Church Street
New York, NY 10007

Alan Serrins
Queller, Fisher, Dienst, Serrins, Washor & Kool, LLP
233 Broadway, 18th Floor
New York, NY 10279

depositions of any or all of these individuals – at her option – as long as such depositions are concluded by January 25, 2008. On or before February 1, 2008, defendants should either reinstate their original motions for summary judgment or seek an extension to file new motions if they prefer.

Conclusion

Scott's application to file the proposed amended complaint is denied. Plaintiff may take additional discovery, and only such discovery, as set forth above.

Dated: November 26, 2007
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Susan Egan
Egan Law Firm
258 Broadway
New York, NY 10007

Carolyn Walker-Diallo
Assistant Corporation Counsel
100 Church Street
New York, NY 10007

Alan Serrins
Queller, Fisher, Dienst, Serrins, Washor & Kool, LLP
233 Broadway, 18th Floor
New York, NY 10279